[Crim. No. 3776. First Dist., Div. One. Dec. 14, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. FRED H. LAWRENCE, Defendant and Appellant.

58

Gregory S. Stout for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from conviction, after jury trial, of three violations of the Health and Safety Code: count 1, violation of section 11170, subdivision (2) (making false statements in prescriptions, reports, orders and records required by Health & Saf. Code, div. 10); count 2, violation of section 11170.5 (giving false names and addresses in connection with the prescribing, furnishing, administering and dispensing of narcotics); count 3, violation of section 11164 (prescribing, administering and dispensing narcotics to an addict).[1]

### Questions Presented

1. On charge of violation of section 11164, is the prosecution required to "negative the statutory exceptions" both in allegation and proof?

2. Court's refusal to give defendant's proffered instructions concerning alleged included lesser offenses.

3. Judicial comment on evidence.

4. Admissibility of opinion evidence.

5. Alleged entrapment or estoppel.

---

[1] His motion for new trial was denied. Defendant was sentenced to the state prison for the term prescribed by law. His sentence was suspended. He was placed on probation for five years and ordered to pay a $1,500 fine.

## EVIDENCE

Except as affected by the legal questions raised herein, defendant does not contend that the evidence is insufficient to sustain the verdicts.

Defendant is a duly licensed doctor of medicine. The violations charged pertain to his prescribing morphine sulphate for Beth Tisdel, whose married name is Helen Atto, a registered nurse about 50 years of age. She had been a patient of defendant for 10 years. Before becoming such she had had one kidney surgically removed. Her remaining kidney did not function properly, causing a moderate and chronic uremia and an elevation of blood pressure. She also suffered with a stricture of the ureter. In 1955 her gall bladder had to be removed. After the period of time considered in the indictment (through February 20, 1959), it appears that she also suffered from incipient diabetes and its attendant discomforts. The uretal stricture caused pain varying in severity from moderate to severe, which in defendant's opinion required constant narcotic administration to keep the patient comfortable and functioning. Defendant had prescribed narcotics for Beth Tisdel from 1950 until February 20, 1959. He also prescribed other medication. After 1955 the narcotic dosage was increased because defendant felt it was necessary to alleviate her condition. From then on she averaged 20 grains of morphine sulphate daily. Expert testimony was to the effect that this was two or three times that necessary for even the most excruciating pain. Defendant admitted that Beth needed only 3 grains per day for her pathology.

On November 21, 1958, Matthew O'Connor of the Bureau of Narcotic Enforcement conferred with defendant concerning the amount of narcotics being prescribed by defendant for Beth Tisdel. Defendant agreed to cut down the dosage or to convince her that she should go into a hospital. On December 24, 1958, Agent Gazzola talked to defendant expressing concern over the quantity of morphine sulphate that was being prescribed for Beth Tisdel. Neither agent knew that prescriptions for Beth Tisdel had also been made under her married name, Helen Atto.

Investigation disclosed the issuance of prescriptions in the two names, that the prescriptions were not cut down, and that Beth Tisdel was an addict. Defendant admitted to Inspector Blanchard that Beth had been "getting too much narcotics in the name of Tisdel," and that he had used the name Atto, her married name, on several occasions. On occasion defend-

ant had placed prescriptions for her over the phone to the pharmacy, and some of the prescriptions were postdated. The address on the prescription often was not correct. Beth Tisdel's correct address was 346 Leavenworth Street. On the prescriptions it sometimes appeared as 345, 364 or 346. Defendant stated that he postdated prescriptions because ''we just finally just got ahead of the prescribing, and then we had to prescribe ahead,'' and that because of postdating he used two different sets of series numbers. On the 19th of February Beth received from defendant two prescriptions, one dated the 25th. This one he said was postdated intentionally, ''part of the picture of postdating.'' He admitted that in his office records there were no entries concerning the narcotics prescribed for Beth. He said he thought that the narcotic prescriptions in triplicate form were sufficient record.

Although on the stand defendant contended Beth needed for her pathological condition the entire amount of narcotics he had prescribed, he admitted telling the inspectors that Beth needed 3 grains a day ''to keep the ureter open,'' and the rest was for her addiction. He said that he made the statement ''under pressure. I was very upset that day.'' The pressure he referred to was pressure of work. On February 5, 1959, defendant had Beth sign a receipt for 285 half-grains which she had obtained from a pharmacy without prescriptions over a period of time. A prescription for 280 half-grains of morphine sulphate dated the same day was produced. Defendant admitted that some of this amount was for morphine sulphate given Beth by the pharmacy at defendant's telephoned request. Defendant admitted that the pharmacy would call him about narcotics for Beth, and he would tell them to give them to her, without prescription, and that he knew his procedure was unlawful. He admitted that he still owed pharmacist Randle prescriptions for 225 half-grains given Beth at his request.

Defendant's contention is that the addresses were merely inadvertent transposition of numbers, and the other acts of defendant merely the result of falling into ''sloppy prescription practices'' over the years.

1. *Negativing the Statutory Exceptions.*

This contention applies only to the third count, violation of section 11164, as section 11170, subdivision (2); and section 11170.5 (the sections violated in the other two counts), apply to procedural requirements pertinent to the

dispensing of any narcotic, regardless of whether or not the doctor had the right to treat the patient for whom a narcotic is prescribed. Section 11164 provides: ''No person shall prescribe for or administer, or dispense a narcotic to an addict, or to any person representing himself as such, except as permitted by this division [div. 10].'' Section 11391, also in division 10, provides, so far as pertinent here: ''No person shall treat an addict for addiction except in one of the following: . . .[certain jails and hospitals] This section does not apply during emergency treatment *or where the patient's addiction is complicated by the presence of incurable disease* . . .'' (Emphasis added.) It is conceded that the exceptions apply to section 11164.

Defendant demurred to the indictment as not stating facts sufficient to constitute an offense, in that the indictment did not negative the italicized exception in the statute. Defendant concedes that ''the opinions emanating from California appellate courts over a period of 100 years'' hold that in a *malum prohibitum* statute of this kind (that is, where the elements of the crime are set out in one section, and the Legislature in another section has provided some form of excuse to the criminality in the first section) the exception need not be negatived in the indictment or information, and is a matter of defense to be proved by the defendant. (*In re Jingles* (1946) 27 Cal.2d 496, 499 [165 P.2d 12]; *People* v. *Pierce* (1939) 14 Cal.2d 639, 642-643 [96 P.2d 784].) '' 'Such exceptions and provisos are to be negatived in the pleading only where they are descriptive of the offense or define it, and where they afford matter of excuse merely, they are to be relied on in defense.' '' (*People* v. *H. Jevne Co.* (1919) 179 Cal. 621, 625 [178 P. 517], quoting from *Ex parte Hornef* (1908) 154 Cal. 355 [97 P. 891].)

In *People* v. *Ratledge* (1916) 172 Cal. 401, 405 [156 P. 455], the court held that the Legislature could reasonably legislate concerning and thereby regulate, a profession involved with the public health. Narcotic addiction is a necessary field over which regulation of the medical profession is essential. (*People* v. *Nunn* (1956) 46 Cal.2d 460 [296 P.2d 813].) The fact of prescribing, administering or dispensing of narcotics to addicts is the crime that is to be controlled. The fact that there are permitted several conditions when treatment may be undertaken without violating the law is merely the providing of excuses or exceptions to the general criminality of prescribing narcotics for an addict.

█ Beth Tisdel concededly is addicted to the use of morphine. Hence, prescribing morphine for her is a crime, unless such prescribing is excused under section 11391; namely, unless she is suffering from an incurable disease ("condition" is probably a more apt term in her case). Defendant contends that she is so suffering. The burden is on him to show it. He is not required to prove it beyond a reasonable doubt. All that is required is that he make such a showing as would produce in the minds of the jury a reasonable doubt as to whether Beth Tisdel is suffering from an incurable disease or condition.

Defendant, while admitting that the rule in California is otherwise as to a statute which does not include in itself any exception, would have us apply the rule of the cases which hold that where the exception is embodied in the very statute defining the crime, the prosecution must negative the exception. He contends, for one thing, that evidence of negation of the exception is as available to the prosecution (if not more so) than to the defendant. This is a debatable question. However, the ease of presenting the case is not the real basis for the burden of proof falling on one or the other side. In our case, the prosecution showed that Beth Tisdel was an addict, and that her addiction was knowingly contributed to by defendant. The burden of showing an excuse for such action shifted to defendant.

█ So far as changing the rule is concerned, the rule has been laid down by our Supreme Court, and we must necessarily follow it. Moreover, we are not satisfied that it is not a good rule. █ Actually, the original sections that dealt with this type of problem in prescribing, administering and dispensing of narcotics, were interpreted much as the trial court did here. In *In re Lord* (1926) 199 Cal. 773 [250 P. 714], the court held that in a prosecution for violation of section 8½ of the "act to regulate the sale and use of poisons" (Stats. 1907, p. 124), which section prohibited a physician from furnishing to his patient more than 4 grains of morphine per day, provided, however, that any physician might furnish as many narcotic drugs as might be reasonably necessary for a patient suffering from an incurable disease, it was not the duty of the prosecution to either plead or prove that defendant was not within the permissive scope of such section. The court there said (p. 777) : "The authorities in this state are without conflict 'that such exceptions and provisos were to be negatived in the pleading only where they are descriptive of the offense or

define it, and that where they afford matter of excuse merely, they are to be relied on in defense.' [Citations.]''

The present sections, 11164 and 11391, were enacted in 1939 (§ 11164, Stats. 1939, p. 758; § 11391, p. 762). The Legislature did not alter the statutory scheme at that time. It must be presumed that the statutes were enacted by the Legislature when it had in contemplation the previous decisions of the court. (*People* v. *Nash* (1959) 52 Cal.2d 36, 43 [338 P.2d 416].)

Inasmuch, as said in the *Lord* case, *supra*, as ''The authorities in this state are without conflict . . .''[2] that the rule is that in prosecutions under statutes similar to section 11164 the prosecution is not required in its pleading to negative the exceptions provided in another statute, we deem it unnecessary to discuss defendant's rather philosophic contention that we should change the rule.

2. *Included Lesser Offenses.*

The court refused defendant's offered instruction to the effect that the offense charged in count 1 (violation of section 11170, subdivision (2), a felony) necessarily included the crimes of violation of sections 11172 and 11169, both misdemeanors. Section 11170, subdivision (2), deals with the making of a false statement in a required prescription, order, report or record. Section 11172 prohibits, with exceptions not relevant here, the prescribing of narcotics over the telephone. Section 11169 prohibits the antedating or postdating of a prescription.

The court also refused defendant's proposed instruction to the effect that the offense charged in count 2 (violation of § 11170.5, a felony) necessarily included the offense of violation of section 11168.[3] Section 11170.5 prohibits the giving of a false name or address in connection with the prescribing, furnishing, administering or dispensing of a narcotic. Section 11168 provides: ''No person shall prescribe, administer, or furnish a narcotic except under the conditions and in the manner provided by this division.''

As to count 1—section 11170, subdivision (2), covers generally the making of any false statement in a prescription,

---

[2]Defendant cites in his brief 26 cases (18 of which have been decided since the *Lord* case) upholding the rule, the latest of which is *People* v. *DeFalco* (1959) 176 Cal.App.2d 590 [1 Cal.Rptr. 578].

[3]Section 11715.7 makes a violation of sections 11170, 11170.5 and 11164 punishable by imprisonment either in the state prison not exceeding six years or in the county jail not exceeding one year.

etc., a felony. Section 11172 (prescribing a narcotic by phone) provides a specific crime. Section 11170, subdivision (2), could be and here was violated without the defendant necessarily prescribing by phone. Moreover, prescribing by phone is not the making of a false statement in a prescription, order, etc. Hence the offense stated in section 11172 is not a lesser offense included in section 11170, subdivision (2).

In *People* v. *Marshall* (1959) 48 Cal.2d 394 [309 P.2d 456], Mr. Justice Schauer, after discussing many of the California cases dealing with the subject of lesser included crimes, pointed out that the yardstick to be used in determining what offenses are ''necessarily included'' within the meaning of section 1159, Penal Code, is whether the lesser offense is *necessarily* included under the language of the accusatory pleading.

In *People* v. *Whitlow* (1952) 113 Cal.App.2d 804, 806 [249 P.2d 35], it is said: ''If, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense is necessarily included in the other.'' (*Cf. People* v. *Krupa,* 64 Cal.App.2d 592, 598 [149 P.2d 416].)

Let us, then, turn to the indictment to determine whether in making a false statement in a prescription, etc., prohibited by section 11170, subdivision (2), as charged, defendant must necessarily postdate a prescription (prohibited by § 11169). The indictment charged defendant with violation of section 11170, subdivision (2), Health and Safety Code, ''committed as follows: The said defendant, during the period commencing January 1, 1958, and ending February 20, 1959 . . . did make false statements in prescriptions, orders, reports and records, required by division 10 of the Health and Safety Code.'' The charge is practically in the language of the section.[4] It clearly appears that the offense charged in the indictment could be committed without necessarily performing the act prohibited by section 11169, namely, postdating a prescription.

The evidence showing false statements made by defendant, other than postdating, such as showing false amounts of narcotics for current consumption, giving false names, addresses, etc., proves, as a fact, as well as by a comparison of the language of section 11169 with the charge under section 11170, subdivision (2), that the offense prohibited in section 11169 is not a necessarily included one.

---

[4]Section 11170, subdivision (2), provides: ''No person shall make a false statement in any prescription, order, report, or record required by this division.''

As to count 2—section 11170.5 provides a specific offense—giving a false name or address in connection with prescribing a narcotic. Section 11168 is a general statute prohibiting the prescribing, administering or furnishing of narcotics not under the conditions provided by division 10. The Legislature must have had some object in mind when it provided the general offense and the specific offense. A reasonable interpretation of section 11168 would not include the giving of a false name or address. Prescribing or furnishing a narcotic not under the conditions provided by the division refers not to the form of a prescription or record, but to the substantive matter of prescribing a narcotic to an individual not entitled to receive it because his situation does not meet the conditions prescribed in division 10. The offense of violating section 11170.5 is charged in the language of the code. It can be committed without necessarily violating section 11168. For this reason section 11168 is not an offense included in section 11170.5.

However, assuming that section 11168 would apply to the giving of a false name or address, such an act would not constitute a lesser included offense within section 11170.5, but would constitute an *identical* offense with the latter. As held in *Berra* v. *United States* (1955) 351 U.S. 131 [76 S.Ct. 685, 100 L.Ed. 1013], where such a situation exists, the jury may not be given the right to find the defendant guilty of the same offense under a statute which provides a lesser punishment than is the punishment under the statute under which the defendant is charged. In that case the petitioner was indicted for wilfully attempting to evade income taxes for certain years by filing with the collector " 'false and fraudulent' tax returns, 'in violation of Section 145 (b), Title 26, United States Code.' " At the trial, he requested that the jury be instructed that the violation of section 3616 (a) of the 1939 Code (53 Stat. 440) was a lesser included offense within the offense with which he was charged. Section 145 (b) provided: " 'Any person . . . who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof . . . [is] guilty of a felony . . .' " (P. 132 of 351 U.S.)

Section 3616 (a) made it a misdemeanor "for any person to deliver to the Collector 'any false or fraudulent list, return, account or statement, with intent to defeat or evade the valuation, enumeration, or assessment intended to be made . . .' " (P. 132 of 351 U.S.) The United States Supreme Court, two

justices dissenting, upheld the refusal of the trial court to instruct that section 3616 (a) provided a lesser offense included in section 145 (b). The court said (p. 134): ". . . here the method of evasion charged was the filing of a false return, and it is apparent that the facts necessary to prove that petitioner 'willfully' attempted to evade taxes by filing a false return (§ 145(b)) were identical with those required to prove that he delivered a false return with 'intent' to evade taxes (§ 3616(a)). In this instance §§ 145(b) and 3616(a) covered precisely the same ground. . . . Here, whether § 145(b) or § 3616(a) be deemed to govern, the factual issues to be submitted to the jury were the same; the instruction requested by petitioner would not have added any other such issue for the jury's determination. When the jury resolved those issues against petitioner, its function was exhausted, since there is here no statutory provision giving to the jury the right to determine the punishment to be imposed after the determination of guilt. Whatever other questions might have been raised as to the validity of petitioner's conviction and sentence, because of the assumed overlapping of §§ 145(b) and 3616(a), were questions of law for the court." (*Cf. Janko* v. *United States* (1960) 281 F.2d 156, 158-159.)

As stated in *People* v. *Harris* (1951) 105 Cal.App. 2d 701, 704 [233 P.2d 633], "If he [the defendant] has committed two crimes he does not have the right to designate the one he would prefer to answer."

As to count 3—the court refused defendant's proposed instruction to the effect that the offense charged in count 3 (violation of § 11164, a felony) included the lesser offense of violation of section 11168, a misdemeanor. As we have heretofore stated, section 11164 prohibits prescribing narcotics for *an addict*, except as permitted by division 10. Section 11168 in effect prohibits prescribing a narcotic *for anyone* except as permitted by said division. Thus, section 11164 deals with a specific situation, prescribing narcotics for an addict, while section 11164 deals with prescribing narcotics generally. It clearly appears that the Legislature believed that contributing to the addiction of an addict was a far more serious offense than prescribing improperly to persons generally. Moreover, it is clear that the Legislature had definitely in mind, in adopting section 11164, that while the terms of section 11168 might be broad enough to include prescribing for an addict, nevertheless it intended that the more serious offense be specifically provided for and with a more serious

penalty. Section 11168 is a catch-all section never intended to replace the more specific section.

The evidence clearly shows that defendant pursued a course of conduct deliberately calculated to conceal the fact that he knowingly was prescribing excessive amounts of narcotics for a person whom he knew to be an addict. With the possible exception of the transposition of the numerals in Beth's street address, all of his violations were deliberate, intentional, and done with a desire to deceive the authorities and with an utter and complete disregard of both the letter and the spirit of the narcotic laws. There was no error in the refusal of the proffered instructions on included lesser offenses.

### 3. *Judicial Comment.*

 During the examination of a pharmacist he was asked if Beth Tisdel had brought him a postdated prescription. Defendant objected on the ground that defendant was not bound by the actions of Beth and the pharmacist outside of defendant's presence. Discussion between counsel ensued. The court said, referring to the question asked, "I think it is proper, if this witness recalls, to offer testimony with respect to the date of delivery of the prescription in relation to the date of the prescription. Now, if there is some explanation that can be offered, in defense of the assertion made by the District Attorney, certainly it is proper to offer an explanation." After further discussion, the court said that the witness could testify that a prescription "dated on a certain date was presented to him on another date. The jury is entitled to draw any reasonable inference from that fact. If the doctor makes an explanation that appeals to the jury with more force than the mere date on the prescription, the jury is entitled to accept the doctor's explanation, if the jury wishes to do so."

 Defendant, in partial explanation of the errors in Beth's address on the various prescriptions, was asked concerning the length of his work day and the strenuous and complex nature of his daily activities. In answer to an objection the court said, "I will allow him to answer. I don't think that it has, frankly, much significance, because people make mistakes when they work short hours or long hours. It depends upon the individual."

Defendant contends that these statements of the court constitute improper comment on the evidence. Defendant did not assign such statements as misconduct, nor did he ask the court to withdraw them. He now suggests only that they should be

considered in the overall picture of the trial. There was no error in either comment. As to the first comment, there can be no question but that one who deliberately post-dates a prescription makes a false statement in such prescription, and thereby violates *section 11170, subdivision (2)*. The violation is complete at the time the prescription is written. Thus, the fact that defendant was not present when a post-dated prescription was presented for filling did not make the evidence of the one who filled it inadmissible, and, the post-dating being shown, it devolved upon defendant to explain. The court's statement was correct. As to the second comment, if it was not a statement of a matter of common knowledge, which it probably was, it could not possibly have been harmful as it did not purport to take away from the jury the duty of determining its effect. It clearly appeared from the court's instructions that the jury were the sole judges of the effect of the evidence.

### 4. *Opinion Evidence.*

 Defendant complains of the admission of certain testimony of Bureau of Narcotic Enforcement Agent Blanchard. On cross-examination his attention was directed to the fact that section 11225, which sets forth facts which must appear on the record required of a person issuing a narcotic prescription, does not state that the prescription must be dated as of the date on which it is written, whereas section 11166 does so state. Blanchard was then permitted over objection to explain the procedural steps required by the bureau under the Health and Safety Code in the writing of prescriptions, one of the requirements being that the prescription must be dated the day upon which it is written. Defendant contends that this allowed Blanchard to give his opinion and conclusion on a matter of law. Defendant argues that section 11225 could be interpreted to permit the prescription to be dated on some date other than the one on which it is written. It is obvious that sections 11225 and 11166 must be read together, and that the lack of reference in section 11225 as to the date to be given in a prescription does not eliminate the requirement of section 11166. In allowing the testimony, the court informed the jury that it was to be guided by the court's statement of the applicable law. In a prosecution of this kind it is evident that an understanding by the jury of the procedure required is necessary to the issues involved, since without such understanding any motive that

defendant might have had when he postdated or used the different names in the prescriptions would not be apparent. As the witness' statement was a correct statement of the law, defendant could not have been injured by it.

Defendant asked for no instruction concerning section 11225, and in his brief frankly states: "No particular issue is made as to the probable effect that such testimony had upon the minds of the trial jury. It is not deemed sufficient weight to have possibly contributed to the verdicts."

 Defendant contends that the testimony of the two pharmacists to the effect that they had filled defendant's post-dated prescriptions was inadmissible. As we have heretofore shown, the offense of false statement is committed as soon as the prescription is written, regardless of who dealt with the prescription thereafter. The evidence of the pharmacists was admissible to show the fact that the prescriptions were post-dated.

Defendant contends that one of the theories upon which the testimony of the two pharmacists concerning postdated pre-scriptions was admitted to prove a conspiracy between defend-ant, Beth and the two pharmacists to violate section 11169 (postdating). He then states a rather involved and ingenious theory that because defendant was engaged with the other three in a conspiracy to commit a misdemeanor, defendant could not be convicted of a felony. As this was not one of the reasons for the admission of the evidence, we deem it unneces-sary to consider this contention.[5]

### 5. *Entrapment or Estoppel.*

 Defendant's final contention is a bit difficult to understand. He refers to it variously as entrapment, res judi-cata, collateral estoppel and estoppel *in pais.* It seems to be

[5]See *People* v. *Thompson* (1954) 122 Cal.App.2d 567 [265 P.2d 590], for a somewhat similar contention. There a person who was a non-officer aided and abetted the other defendant, an officer, in the violation of section 6200, Government Code. It was argued that the nonofficer could have been convicted of a violation of Government Code section 6201, which is a lesser offense, and therefore he could not be convicted of a violation of section 6200 through section 31, Penal Code. The court refused to follow this argument. It held that only in the case where the crime charged required two participants and there was no penalty prescribed for one of the two required participants was section 31 in-effective to charge that unpenalized person with the crime. Where, as here, "If it does not affirmatively appear from the legislation that the law which prescribes punishment for the lesser offense was intended to exclude prosecution for the greater, such an intention cannot be read into it by way of interpretation." (P. 571.)

based upon the claim that when the bureau enforcement officers conferred with defendant in November 1958, their records showed that he had been issuing prescriptions to Beth in both her names and at the various addresses, and yet they did not discuss that matter with him but only the matter of reducing the dosage. Thereby, defendant contends, they, in effect, entrapped him into believing he could continue his violations without fear of punishment. While, of course, the false records were before the bureau, there is no evidence that their falseness was known to the bureau. In fact, the officers testified that they did not know that Beth Tisdel and Helen Atto were one and the same person. They only knew that defendant's records showed that Beth Tisdel was receiving too many narcotic prescriptions. The conferences were for the purpose of getting defendant to discontinue his practice of excessive prescriptions of narcotics to Beth, and of warning defendant against a continuance of that practice. No element of entrapment nor of approval of defendant's practices was present, nor was defendant encouraged by the officers in any way to continue any violations of the law.

The judgment is affirmed.

Tobriner, J., and Sullivan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1962.