[No. A021534. First Dist., Div. Two. June 21, 1984.]

In re ANDRE R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANDRE R., Defendant and Appellant.

COUNSEL

Mary Geissler Lanzone, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SMITH, J.—Appellant Andre R. appeals from an order adjudging him to be a person described in Welfare and Institutions Code section 602 upon the finding that he committed a misdemeanor violation of Penal Code section 12021.5 (possession of a concealable firearm by a minor unless such minor has written permission or is accompanied by a parent or guardian).

BACKGROUND

At approximately 3 a.m. on November 14, 1982, an undisclosed number of Oakland police officers were dispatched by radio to the vicinity of East 14th Street and 88th Avenue to investigate a possible robbery. The initial report provided that four male black juveniles were robbing an old man, and an updated dispatch related that these four suspects had been seen in a bar located at East 14th Street and 87th Avenue. One of the suspects was reported as wearing a black hat and a black jacket. Another wore a brown jacket.

The officers parked in front of the bar just as Oakland Officer Sandoval spotted three or four male black juveniles exiting it. One juvenile, later identified as sixteen year-old appellant, was wearing a black hat and jacket. He continuously kept his right hand in his right jacket pocket as the officers approached and questioned them. When the suspects questioned the officers' authority to stop them, one policeman suggested that the juveniles be separated by placing them in separate patrol cars. The officers then walked the individuals to respective cars until appellant broke free and started running westbound on East 14th Street.

Officer Sandoval chased appellant from East 14th onto 86th Avenue at which point appellant crossed 86th in a diagonal fashion to the west sidewalk. The officer was 20 to 25 feet behind. When appellant reached the sidewalk, Officer Sandoval stated he saw appellant release a small object from his waist area, dropping this object vertically onto the ground. It fell directly from appellant's body, and the officer did not hear any sound as it dropped.

Appellant then recrossed the street in a southbound direction until fellow Officer Barnett appeared in a patrol car, pulled alongside appellant, and ordered him to stop. Appellant began to approach the car in which Barnett sat until Officer Sandoval grabbed him and knocked him down. After handcuffing appellant, the officers returned to the area where Sandoval had seen the object dropped. With the aid of flashlights, Officer Barnett found a gray .22 caliber revolver with brown grips laying on its side in the middle of the sidewalk. The object was in the immediate area where Sandoval had seen the drop. This area is bordered by an empty lot and by a strip of grass or weeds. The officers did not see any liquor bottles or debris although there may have been some in the lot or grass border. There had been no vehicular or pedestrian traffic while Officer Sandoval chased appellant and retrieved the gun.

A petition was filed on November 16, 1982, in Alameda County Juvenile Court alleging that appellant was a person described in Welfare and Insti-

tutions Code section 602 in that he had violated Penal Code section 12021.5. A supplemental petition was filed under Welfare and Institutions Code section 777 seeking an order modifying a previous order granting probation to the minor.

At a jurisdictional hearing, Officer Sandoval related the above-mentioned facts, and appellant's brother, Rodney R., testified that appellant had had a dark .25 caliber gun with a brown handle with him two days before his arrest. Appellant's father—his parents were never married and do not now live together—testified that appellant did not have permission to have a concealable firearm on his person. However, appellant was on probation in the custody of his mother, although he had visited his father the night of his arrest.

Appellant testified on his own behalf that he had been drinking at a party on the night at issue and that when the officers approached and asked him to get against the car, he remembered he had a small, half-empty bottle of gin on him. Fearing that possession of the gin would affect his probation status, he ran from the officers. While running, he threw the bottle which then hit the "side of the curve" and bounced into a grass area, which was about 15 to 20 feet from where the officers later found the gun.

The court found that the evidence was beyond a reasonable doubt that the allegation in the petition was true. At a subsequent dispositional hearing, the court rejected the probation officer's recommendation that appellant be returned to the custody of his mother. Appellant has at least two other weapons offenses, has failed to provide court-ordered restitution on earlier charges, and does not attend school as required. Appellant was then committed to the custody of his probation officer to be placed "in some suitable county facility" such as Los Cerros camp or, as a second alternative, to the California Youth Authority. The Court stated, "He's placed under the usual terms and conditions of probation, including the condition that he obey all laws; that he observe all of the rules and regulations of the camp."

## APPEAL

Appellant raises two issue on appeal: whether the trial court's finding that he possessed a concealable firearm in violation of Penal Code section 12021.5 is supported by substantial evidence and whether the trial court's dispositional order is unconstitutionally vague.

## I

Penal Code section 12021.5 provides in pertinent part that "[a] minor may not possess a concealable firearm unless he or she has the written

permission of his or her parent or guardian to have such firearm or is accompanied by his or her parent or guardian while he or she has such firearm in his or her possession."[1]

■ Appellant initially asserts that the finding that he had violated this section is not supported by substantial evidence because there was inadequate evidence that he did not have a parent's written permission to carry a concealable firearm. Conceding that the prosecutor did elicit testimony from appellant's father that his son did not have permission to carry the weapon, appellant nevertheless argues that the prosecutor improperly failed to provide evidence that appellant's mother had not given such permission. Appellant's parents do not live together, and, at the time of his arrest, appellant was on probation in the physical custody of his mother.

This contention must fail. Appellant erroneously assumes that the prosecutor was required to prove the lack of a parent's written permission to carry a concealable firearm as an element of the crime under section 12021.5. Rather, that section provides that a minor may not carry such a concealable weapon "unless" he has the written permission of a parent or is in the company of a parent.

■ It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant. (*Ex parte Hornef* (1908) 154 Cal. 355, 360 [97 P. 891]; *People* v. *Lawrence* (1961) 198 Cal.App.2d 54, 62-63 [18 Cal.Rptr. 196]; *People* v. *Mason* (1960) 184 Cal.App.2d 317, 356 [7 Cal.Rptr. 627]; Witkin, Cal. Crim. Procedure (1963) Proceedings Before Trial, §§ 202-203, pp. 190-191.) ■ It was stated in *Ex parte Hornef, supra,* 154 Cal. 355, that " '[t]he question is whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition, or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception and not its location which determines the question. Neither does the question depend upon any distinction between the words "provided" or "except" as they may be used in the

---

[1]Section 12021.5 provides in full: "(a) A minor may not possess a concealable firearm unless he or she has the written permission of his or her parent or guardian to have such firearm or is accompanied by his or her parent or guardian while he or she has such firearm in his or her possession.

"(b) A minor may not possess live ammunition unless he or she has the written permission of his or her parent or guardian or is accompanied by his or her parent or guardian, except while going to or from an organized lawful recreational or competitive shooting activity or a lawful hunting activity.

"(c) Violation of this section is a misdemeanor."

statute. In either case, the only inquiry arises, whether the matter excepted, or that which is contained in the proviso, is so incorporated with, as to become, in the manner above stated, a part of the enacting clause. If it is so incorporated, it shall be negatived, otherwise it is a matter of defense.'" Thus, where exceptions or provisos are not descriptive of the offense, or define it, but rather afford a matter of excuse, "they are to be relied on in [the] defense." (*Id.*, at p. 360; *People v. Lawrence, supra,* 198 Cal.App.2d at pp. 62-63; *People v. Mason, supra,* 184 Cal.App.2d at p. 356; see also *People v. Ruddick* (1930) 107 Cal.App. 785, 793 [288 P. 45].)

■ Here, the existence of written parental permission does not define or describe the offense. The offense is the possession of a concealable firearm by a minor. Hence, written parental permission "excuses" a minor from the sanctions imposed by section 12021.5 and must be raised as a defense by the accused.

■ This conclusion is equally supported by the rule of necessity and convenience which provides that the burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient. Of course, this burden may not be unduly harsh or unfair. (*People v. Montalvo* (1971) 4 Cal.3d 328, 334 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518]; *People v. Yoshimura* (1979) 91 Cal.App.3d 609, 625-629 [154 Cal.Rptr. 314] [permit to possess explosives, a machine gun, and substances or materials]; see also *People v. Boo Doo Hong* (1898) 122 Cal. 606, 608-609 [55 P. 402] [license to practice medicine]; *People v. Flores* (1976) 62 Cal.App.3d Supp. 19, 22-23 [133 Cal.Rptr. 759] [license to do business as a carrier]; *People v. Marschalk* (1962) 206 Cal.App.2d 346, 349-350 [23 Cal.Rptr. 743] [prescription authorizing possession of narcotics]; *People v. Fortch* (1910) 13 Cal.App. 770, 775 [110 P. 823] [license to practice dentistry].)

■ The present case contains an even more compelling fact situation to apply the rule of convenience than the above-cited cases. Here, the exonerating evidence is not a matter of public record but rather is evidence that could only be produced by three people: appellant, his father and his mother. The existence of written parental permission is, thus, a fact peculiarly within appellant's knowledge. Subjecting him to the burden of producing such exonerating evidence would not be unduly harsh or unfair.

■ Appellant next contends that there is insufficient evidence to support the conviction because there is no direct evidence linking him to the gun found on the sidewalk.

We disagree. ■ Whether the evidence presented at trial is direct or circumstantial, an appellate court " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People* v. *Towler* (1982) 31 Cal.3d 105, 117-118 [181 Cal.Rptr. 391, 641 P.2d 1253]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) ■ Here there is ample evidence—albeit circumstantial evidence—to support the conviction. Oakland Police Officer Sandoval testified that he saw appellant take an object from his waist area and drop it in a direct vertical line to the sidewalk. Subsequently, the officers found a gray .22 caliber revolver with brown grips laying on its side in the middle of the sidewalk. Officer Sandoval stated that the gun was "in the *immediate* area" where he had seen the drop take place. There were no other articles, whether liquor bottles or other debris on the sidewalk, and there had been no vehicular or pedestrian traffic as the officer chased appellant and later retrieved the gun. Furthermore, appellant had been seen by his brother with a dark .25 caliber gun with a brown handle two days before his arrest. His brother had not been able to see the full barrel of the gun, and thus the discrepancies in the purported caliber of the gun are not problematic.

## II

Appellant finally contends that the trial court's order of probation is vague and uncertain in violation of substantive due process. However, at oral argument, appellant conceded that this issue has been rendered moot by a subsequent order, and we therefore do not address the issue on appeal.

The judgment is affirmed.

Rouse, Acting P. J., and Flaherty, J., concurred.