[No. H006642. Sixth Dist. Sept. 14, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR FUENTES, Defendant and Appellant.

**COUNSEL**

John F. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Defendant Arthur Fuentes was convicted of felony possession of heroin (Health & Saf. Code, § 11350) and

misdemeanor possession of a hypodermic needle (Bus. & Prof. Code, § 4149). He was sentenced to the upper term of three years on the felony and to a concurrent term of six months on the misdemeanor.

Defendant contends that the trial court erred when it instructed the jury pursuant to CALJIC No. 16.005. For reasons we will discuss, we affirm.

### STATEMENT OF FACTS

An undercover narcotics officer answered an official call to check out suspicious activity at a Salinas location. Responding to the call, the officer found an unlighted van parked in front of defendant's home. After a few minutes' observation, the officer saw a man leave the van. As the officer approached, the man tossed an object into nearby bushes. The officer retrieved the object, which turned out to be several syringes with needles and needle sheaths attached. The officer testified the man showed symptoms of being under the influence of a controlled substance. The man's arm showed signs of a recent injection, which the officer believed had occurred immediately before the man's exit from the van.

As the officer arrested the man, another man walked up to the sliding door of the van, said "narc," and walked away. Thereafter, defendant and codefendant left the van and walked to defendant's front porch.

Over defendant's objections, the officer used his flashlight to look inside the van through a broken window. He testified he saw a syringe with plunger drawn back and what appeared to be liquid in it. The syringe was on a cutting board. As the officer started to enter the van, defendant protested that the officer needed a search warrant. The officer said a warrant was unnecessary because the syringe was in plain view.

The officer searched the van. He saw several "cookers." Under the cutting board, he found what proved to be a dozen "hits" of tar heroin and a chunk of heroin, with a total street value of approximately $200. He also seized a razor blade with a dose of heroin attached, an empty bindle, a crack pipe, baggies, water, a tie rag, and a lighter. Backup officers took photographs.

Defendant and codefendant were arrested. No money was found in the van or on defendant or codefendant. Neither defendant nor codefendant was found to have a controlled substance on his person or to be under the influence of a controlled substance.

Defendant testified that the van was his, that it had not worked for several months, and that people had broken into the van to sleep. He said

that on the night of their arrest, he and codefendant, a mechanic, were working on the carburetor, which is accessed from inside the van. Although defendant admitted to being a heroin addict, he denied that he sold drugs, that he knew there were drugs in the van, or that he gave drugs to the man who exited the van. He said he left the van after the officer's arrival because it had gotten too dark to work.

DISCUSSION

 Defendant contends that the trial court erred when it instructed the jury pursuant to CALJIC No. 16.005 as this instruction violated his constitutional due process right to a presumption of innocence. He argues that it improperly shifted the burden of proof as to an element of the crime by requiring defendant to show that his acquisition of the hypodermic needle was lawful, rather than requiring the prosecutor to show that defendant's acquisition was unlawful. We disagree.

Business and Professions Code section 4149 provides: "No person shall possess or have under his or her control any hypodermic needle or syringe except when acquired in accordance with the provisions of this article." The trial court instructed the jury: "Every person who has in his possession or under his control a hypodermic needle or hypodermic syringe which was not lawfully acquired from a person authorized by law to dispense the same, is guilty of a misdemeanor, violation of section 4149. If the evidence establishes beyond a reasonable doubt that a defendant possessed such a needle or syringe, that defendant then has the burden of raising a reasonable doubt that he unlawfully acquired such object." (CALJIC No. 16.005.)

 "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) But a state has the power "to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion . . . ." (*Speiser* v. *Randall* (1958) 357 U.S. 513, 523 [26 L.Ed.2d 1460, 1471, 78 S.Ct. 1332].)

A state may allocate the burden of persuasion to a criminal defendant through the device of an affirmative defense. The United States Supreme Court has afforded the states wide latitude in designating affirmative defenses. (See *Martin* v. *Ohio* (1987) 480 U.S. 228, 232 [94 L.Ed.2d 267, 273, 107 S.Ct. 1098].) In *Patterson* v. *New York* (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319], for example, the court approved a New York law requiring the accused in a prosecution for second degree murder to prove by

a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the charge to manslaughter. The court observed: "To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate. [¶] We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." (*Id.* at pp. 209-210, fn. omitted [53 L.Ed.2d at pp. 291-292]; see, e.g., *People* v. *Monk* (1961) 56 Cal.2d 288, 297 [14 Cal.Rptr. 633, 363 P.2d 865] [defendant has burden of proving his insanity by a preponderance of the evidence].)

 In drafting Business and Professions Code section 4149, the Legislature relegated to defendant the burden regarding lawful acquisition of a hypodermic needle or syringe. "It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant. [Citations.]" (*In re Andre R.* (1984) 158 Cal.App.3d 336, 341 [204 Cal.Rptr. 723]; see also *People* v. *Bolden* (1990) 217 Cal.App.3d 1591, 1601 [266 Cal.Rptr. 724].) Section 4149 does just that. It first defines the offense in unconditional terms: "No person shall possess or have under his or her control any hypodermic needle or syringe . . . ." It then specifies an exception to its operation: "except when acquired in accordance with the provisions of this article." This formulation clearly establishes the Legislature's intent to provide that authorized possession is an affirmative defense that must be raised and proved by the accused. The jury instruction reflects the Legislature's intent and the statutory requirement.

The designation of authorized possession as an affirmative defense "is equally supported by the rule of necessity and convenience which provides that the burden of proving an exonerating fact may be imposed on a defendant if its existence is 'peculiarly' within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient. Of course, this burden may not be unduly harsh or unfair. [Citations.]" (*In re Andre R., supra,* 158 Cal.App.3d at p. 342; see also *Morrison* v. *California* (1934) 291 U.S. 82, 91 [78 L.Ed. 664, 670-671, 54 S.Ct. 281] [the burden may be shifted to the accused in the event of "a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception"].)

It is not unduly harsh or unfair to place the burden of proving authorized possession under Business and Professions Code section 4149 upon the

defendant. This is a fact peculiarly within defendant's personal knowledge and relatively difficult for the prosecutor to disprove.

Moreover, the designation of authorized possession of a hypodermic needle or syringe as an affirmative defense is in accord with the practice in other jurisdictions (see, e.g., *Commonwealth* v. *Jefferson* (1979) 377 Mass. 716 [387 N.E.2d 579] [authorized possession of hypodermic needle or syringe is an affirmative defense]) and corresponds to the practice in this state of imposing upon the accused the burden of showing lawful possession in similar cases (see, e.g., *In re Andre R.*, *supra*, 158 Cal.App.3d 336, 342 [minor's possession of concealable firearm]; *People* v. *Yoshimura* (1979) 91 Cal.App.3d 609, 625-629 [154 Cal.Rptr. 314] [possession of explosives, machine gun]; *People* v. *Marschalk* (1962) 206 Cal.App.2d 346, 349 [23 Cal.Rptr. 743] [possession of narcotics]; *People* v. *Spagnoli* (1922) 58 Cal.App. 154, 159 [208 P. 185] [possession of intoxicating liquor]).

Defendant relies particularly upon *Carella* v. *California* (1989) 491 U.S. 263 [105 L.Ed.2d 218, 109 S.Ct. 2419], in which the accused was convicted of grand theft for failure to return a rented car. In accordance with state statutes, the trial court instructed the jury that a person is (1) presumed to have embezzled a rented car if he willfully and intentionally fails to return the car within five days after expiration of the rental agreement, and (2) presumed to have intended to commit theft by fraud if he fails to return rented property within twenty days after the owner's written demand. The Supreme Court reversed the conviction, holding that these mandatory presumptions improperly relieved the state of its burden to prove each element of the crime beyond a reasonable doubt, subverted the presumption of innocence, and invaded the truth-finding task assigned to the jury.

The jury instructions disapproved in *Carella* are readily distinguishable from the instruction challenged here. After approving the affirmative defense of extreme emotional disturbance at issue in *Patterson* v. *New York*, *supra*, 432 U.S. at page 210 [53 L.Ed.2d at page 292], the Supreme Court cautioned: "This view may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard. ■■ '[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' *McFarland* v. *American Sugar Rfg. Co.*, 241 U.S. 79, 86 (1916)." The jury instructions in *Carella* exceeded constitutional limits by creating mandatory presumptions as to the guilt of the accused. ■■ The instruction in this case did not establish a mandatory presumption that interfered with the duties of either the prosecutor or the

jury. The instruction simply informed the jury that defendant had the burden of proving that his acquisition of the hypodermic needle was lawful.

DISPOSITION

The judgment of conviction is affirmed.

Agliano, P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 20, 1990.