[No. C012093. Third Dist. July 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
GWENDOLYN RAE GOTT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*See footnote 2, *post*, page 883.

COUNSEL

James H. Dippery, Jr., for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BLEASE, J.—A jury convicted defendant of several controlled substance offenses, including one count of receiving, without a permit, a substance from outside of California containing ephedrine which is barred from transfer under federal law. (Health & Saf. Code, § 11106.)[1] She appeals from the ensuing order of probation.

Defendant concedes that she did not have a permit. She claims the evidence fails to show that federal law bars transfer of the ephedrine she received. The Attorney General accepts defendant's assessment but claims she bears the burden of producing such evidence.

In the published portion of this opinion we conclude that defendant's challenge to the ephedrine conviction has merit.[2] The People have the burden of proof that a permit was required by section 11106 for the substance received by the defendant. A permit is not required if the substance is of a kind which could lawfully be transferred under federal law. This requirement is so incorporated in the language of section 11106 as to become a part of the definition of the offense. For that reason the People bear the burden of proof that the substance cannot be transferred under federal law.

We will reverse the conviction of the ephedrine offense. We will affirm defendant's convictions of the remaining offenses.

FACTS

In November 1990 police officers intercepted a package shipped to defendant from Iowa. It contained 100 bottles of 1,000 pills each of which tested

---

[1]All statutory references are to the Health and Safety Code unless otherwise indicated.

[2]The Reporter of Decisions is directed to publish the opinion with the exception of part III of the Discussion.

positive for ephedrine. The package was delivered to defendant, and officers searched her home pursuant to a warrant. The officer who seized the package testified that the tablets were ephedrine hydrochloride and that each contained 25 milligrams of ephedrine. He did not explain the basis for these assertions. The chemist who testified for the prosecution testified that the tablets "contained ephedrine. . . ."

Defendant testified that she had ordered ephedrine pills from a mail-order company magazine advertisement for a small store she planned to open for the sale of items such as vitamins and diet pills. She conceded she did not have a permit to receive ephedrine.

DISCUSSION

I

Section 11106 proscribes the interstate receipt, without a permit from the Department of Justice, of a substance containing ephedrine of the kind which cannot be transferred under federal law.

At the time the defendant was charged with this offense section 11106 read in pertinent part: "(a) Any . . . person . . . who receives from a source outside of the state any substance specified in subdivision (a) of Section 11100 shall obtain a permit for the conduct of that business from the Department of Justice. However, no permit shall be required of any . . . person for the . . . receipt of any drug which contains ephedrine . . . and which is lawfully sold, transferred, or furnished over the counter without a prescription or by a prescription pursuant to the federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 301 et seq.) or regulations adopted thereunder.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) . . . [R]eceiving any substance specified in subdivision (a) of Section 11100 without a permit, is a misdemeanor or a felony." (Stats. 1989, ch. 1133, § 3, pp. 4188-4189.)

Former subdivision (f) of section 11106 defines the offense. It requires that a permit be obtained for substances listed in section 11100—chemicals that are precursors of controlled substances, one of which is ephedrine. (§ 11100, subd. (a)(16).) However, subdivision (a) of section 11106 exempts from the permit requirement a drug containing ephedrine of the kind which lawfully may be transferred under federal law.

At issue is whether the People bear the burden of proof of the absence of the exemption for the ephedrine lawfully transferable under federal law.

■ The Attorney General argues that the exemption language creates an affirmative defense upon which the defendant bears the burden of production of the evidence. He relies on three cases, only one of which is apposite—*People* v. *Fuentes* (1990) 224 Cal.App.3d 1041 [274 Cal.Rptr. 17]. The defendant was charged with possessing syringes and needles in violation of Business and Professions Code section 4149, which provided: "No person shall possess or have under his or her control a hypodermic needle or syringe except when [lawfully] acquired in accordance with the provisions of this article." He contended that the trial court erred in ruling that it was his burden to raise a reasonable doubt whether the syringes and needles were lawfully acquired. The Court of Appeal rejected the claim, reasoning as follows. "In drafting Business and Professions Code section 4149, the Legislature relegated to defendant the burden regarding lawful acquisition of a hypodermic needle or syringe. 'It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant. [Citations.]' (*In re Andre R.* (1984) 158 Cal.App.3d 336, 341 [204 Cal.Rptr. 723]; see also *People* v. *Bolden* (1990) 217 Cal.App.3d 1591, 1601 [266 Cal.Rptr. 724].) Section 4149 does just that. It first defines the offense in unconditional terms: 'No person shall possess or have under his or her control any hypodermic needle or syringe . . . .' It then specifies an exception to its operation: 'except when acquired in accordance with the provisions of this article.' This formulation clearly establishes the Legislature's intent to provide that authorized possession is an affirmative defense that must be raised and proved by the accused. The jury instruction reflects the Legislature's intent and the statutory requirement." (224 Cal.App.3d at p. 1045.)

■ *Fuentes* sets forth a grammatical rule, borrowed from *In re Andre R., supra*, for determining whether the language of a penal statute imposes an affirmative defense. "[W]here a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant." (*People* v. *Fuentes, supra*, 224 Cal.App.3d at p. 1045.) The rule is misstated, as shown by the holding in *People* v. *Gallardo* (1953) 41 Cal.2d 57 [257 P.2d 29] (Penal Code former section 274, making it a crime to procure an abortion "unless . . . necessary to preserve [the mother's] life," does not impose an affirmative defense of necessity).

The correct approach to construction is more subtle. The leading California case is *Ex Parte Hornef* (1908) 154 Cal. 355 [97 P. 891]. It rejects the fixed grammatical approach of *Andre R.* "It is the nature of the exception and not its location which determines the question." (*Hornef, supra*, at pp. 359-360.) *Hornef* explicates the criteria for allocating the burden of proof of

an exception in the following way. "There is practically no conflict in the authorities as to what the general rule is in regard to the necessity of alleging in a complaint, indictment, or information, facts showing that an accused does not come within exceptions or provisos contained in the statute upon which the prosecution is based. The accepted rule is expressed very clearly in *State* v. *Abbey* [1856] 29 Vt. 60, [67 Am.Dec. 754]. It was there said: 'The question is whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition, or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception and not its location which determines the question. Neither does the question depend upon any distinction between the words 'provided' and 'except' as they may be used in the statute. In either case, the only inquiry arises, whether the matter excepted, or that which is contained in the proviso, is so incorporated with, as to become, in the manner above stated, a part of the enacting clause. If it is so incorporated, it shall be negatived, otherwise it is a matter of defense.' The court further said that such exceptions and provisos were to be negatived in the pleading only where they are descriptive of the offense or define it, and that where they afford [a] matter of excuse merely, they are to be relied on in defense." (*Id.* at pp. 359-360.)

In *Hornef* two statutes were in play. One provided that it was unlawful to practice dentistry without a license "provided that" it did not affect the right of dentists to practice " 'who have [the] lawful right to practice dentistry at the time of the passage of this act.' " (154 Cal. at p. 358.) The other provided it was a misdemeanor to practice dentistry without a license. (*Ibid.*) After reviewing various out-of-state authorities, *Hornef* decided that the grandfathered exception to the prohibition against practicing without a license did not constitute a part of the definition of the offense and was a matter of affirmative defense. "At most, the proviso is a statement of an exception which in no degree qualifies the offense created by the statute, but simply exempts certain persons from the operation of such statute." (*Id.* at p. 362.)

*Hornef* does not provide a calculus for distinguishing exceptions that are matters of definition from exceptions that are matters of excuse. It endorses the statement in *State* v. *Abbey* (1856) 29 Vt. 60 [67 Am.Dec. 754] that "[i]t is the nature of the exception and not its location which determines the question." This view, sometimes called the descriptive nature test, is explained in an A.L.R. annotation: "Logically, in a pleading intended to set out the facts constituting a certain crime, it would appear necessary to negative only such an exception as enters into the description of the crime—not grammatically, according to its location in the statute, but objectively,

according to the judge's assumption of what was in general meant to be forbidden. These critics [of the location rules] have sought to qualify it accordingly. They declare that the question turns on the actual nature of the exception; on whether its negative fact is made an essential ingredient of the offense." (Annot., Burden of Averment and Proof as to Exception in Criminal Statute on Which the Prosecution is Based (1944) 153 A.L.R. 1218, 1228.)

*State* v. *Abbey, supra,* relied upon in *Hornef,* supplies several examples of definitional exception. Two of these, which it briefly summarizes, are helpful. "The case *State* v. *Barker* [1846] 18 Vt. 195, is a good illustration of the rule where the exception in the statute should be and was required to be negatived. Not all labor and business on the Sabbath is forbidden by the statute on which that prosecution was had, but that only which is *unnecessary,* and which is not a matter of *charity.* That exception defined the kind of labor forbidden, and qualified the whole enacting clause. The same rule was recognized in the case *Smith* v. *Moore,* 6 Greenl. 236. It was not every neglect by the executor to file the will within thirty days that constituted the penal matter, but it was the *unexcused neglect;* thus defining and qualifying the act which constituted the matter for which the penalty was given. To prove that the executor *neglected* to file the will within thirty days would not make even a *prima facie* case; it must also be proved that it was *unexcused.* For that reason it was held the exception should be negatived." (*State* v. *Abbey,* 29 Vt. at pp. 67-68, original italics.)

This line of distinction resembles that given in *Morrison* v. *California* (1934) 291 U.S. 82 [78 L.Ed. 664, 54 S.Ct. 281] as marking the constitutional boundary that delimits the legislative power to create an affirmative defense. (See *Williams* v. *United States* (D.C. Cir. 1943) 138 F.2d 81, 83 [78 App.D.C. 147, 153 A.L.R. 1213]: "The common sense tests laid down in [*Morrison*] are as relevant in determining where the legislature intended to place the burden of proof as they are to the constitutionality of shifting that burden.") In *Morrison,* the Supreme Court gives the following criteria: "For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance [citations], or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception. [Citation.] The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a

common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One can do no more than adumbrate them; sharper definition must await the specific case as it arises." (291 U.S. at pp. 90-91 [78 L.Ed. at pp. 670-671], fn. omitted.)

A proper approach to statutory construction rules out an application which threatens the crossing of this constitutional line where no express legislative choice has been made to place an affirmative burden of proof upon the defendant. The approach as explained in *State* v. *Abbey, supra,* affords adequate constitutional leeway.

With these considerations in mind, we turn to the construction of section 11106.

## II

Initially we note the awkward grammar of section 11106. Former subdivision (f) of section 11106 proscribes "receiving any substance specified in subdivision (a) of Section 11100 without a permit . . . ." The latter section contains a list of substances, including ephedrine. Without words of qualification, the receipt of any such substance would require a permit. However, subdivision (a) of section 11106 does contain a qualification in providing that no permit is required of "any drug which contains ephedrine . . . and which is lawfully sold [or] transferred, . . . pursuant to the federal Food, Drug, and Cosmetic Act . . . ."

To make sense of the statute these subdivisions must be read together such that the penal sanction of "[s]ubdivision (f) is not triggered until there is a violation of one of the permit requirements under subdivision (a)." (*Getz* v. *Superior Court* (1989) 211 Cal.App.3d 1167, 1170 [260 Cal.Rptr. 25].) Manifestly, subdivision (f) of section 11106 does not define an offense unless a permit is required under subdivision (a). Subdivision (a) in turn specifies the substances and circumstances in which a permit is required.

The question is whether the People must prove that the substance containing ephedrine, received from a source outside the state, is of the kind for which a permit is required under section 11106, subdivision (a), which incorporates the standard of the federal law. Neither party informs us of the federal standard by which it is determined which drugs containing ephedrine can and cannot lawfully be transferred. Presumably it is addressed to the amount of ephedrine in the drug or its chemical composition. The necessary implication to be drawn from this is that some substances containing ephedrine are entirely lawful to possess and are freely available to the general

public. Thus, the fact that defendant received a substance containing ephedrine alone carries no sinister implication, a constitutional criterion for burden shifting. Nor does it present a prima facie case of proscribed behavior.

The lawfulness of the transfer of the substance containing ephedrine under federal law establishes the divide between the innocent *general* availability of the substance and the domain of prohibited unlawful conduct. The federal standard, mirrored in the permit requirement, does not divide a limited domain of exemption or excuse from a general domain of proscribed conduct; it determines what is or is not proscribed conduct.

Applying the rule in *State* v. *Abbey, supra,* we conclude that the criteria for a permit under subdivision (a) of section 11106—the exception in issue here—is incorporated within the definition or description of the offense.

There is one last policy consideration. There is no reason to shift to the defendant the burden of proof of lawfulness of a transfer of ephedrine under the federal law, based upon a manifest disparity in the convenience of proof and opportunity for knowledge of the parties.[3] There is nothing in the record or the statutory context which suggests that a defendant charged with this offense inherently may acquire peculiar knowledge in the receipt of a substance containing ephedrine that bears on the question of whether the substance can be transferred under federal law.

We conclude that in a prosecution under section 11106, former subdivision (f), for receiving ephedrine the People bear the burden of proof that a permit is required under subdivision (a) of that statute.

For all that appears in this record, the defendant may have been convicted of an offense which she did not commit. The failure of proof that the defendant was required to have such a permit renders her conviction of this offense unsupported by substantial evidence.

The conviction must be reversed.

---

[3]This consideration is well stated in *People* v. *Fuentes, supra,* 224 Cal.App.3d 1041 at page 1045. "The designation of authorized possession as an affirmative defense 'is equally supported by the rule of necessity and convenience which provides that the burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient. Of course, this burden may not be unduly harsh or unfair. [Citations.]' (*In re Andre R., supra,* 158 Cal.App.3d at p. 342; see also *Morrison* v. *California* (1934) 291 U.S. 82, 91 [78 L.Ed. 664, 670-671, 54 S.Ct. 281] [the burden may be shifted to the accused in the event of 'a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception'].)"

## III

### *Mistake of Fact Instruction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment (order of probation) is reversed in part and affirmed in part. The conviction for violation of section 11106 is reversed. The other convictions are affirmed. The matter is remanded to the trial court with directions to resentence the defendant if she moves for resentencing within 15 days of finality of this opinion; if the defendant waives resentencing, the order of probation, modified to reflect reversal of the section 11106 conviction, will stand affirmed.

Puglia, P. J., and Sims, J., concurred.

---

*See footnote 2, *ante*, page 883.