102 Cal.Rptr.2d 78 (2000)
85 Cal.App.4th 290
The PEOPLE, Plaintiff and Respondent,
v.
Myron Carlyle MOWER, Defendant and Appellant.
No. F030690.
Court of Appeal, Fifth District.
December 6, 2000.
As Modified on Denial of Rehearing January 3, 2001.
Review Granted March 14, 2001.
*79 Richard D. Runcie, under appointment by the Court of Appeal, Fresno, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Stephen G. Herndon and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
ARDAIZ, P.J.
This is a medical marijuana defense case. Appellant was charged and convicted of Health and Safety Code section 11358, cultivation of marijuana, a felony, and Health and Safety Code section 11357, subdivision (c), possession of more than *80 28.5 grams (one ounce) of marijuana, a misdemeanor. Appellant appeals from the subsequent judgment and contends: (1) that he was "in custody" when he gave a statement in the hospital without receiving Miranda[1] warnings and the statement therefore should have been excluded; (2) that the statement he gave in the hospital was involuntary and therefore should have been excluded; (3) that the trial court should have instructed the jury on an affirmative defense sua sponte; (4) that the trial court erred in failing to give the jury a special verdict form; (5) that he is entitled to complete immunity under Health and Safety Code section 11362.5, the Compassionate Use Act; and (6) that Tuolumne County's policy of limiting marijuana growth for personal use to three plants violates the United States and California Constitutions' ex post facto clauses. As set forth below, we reject all of appellant's contentions and affirm the judgment.

FACTS
Appellant is a seriously ill diabetic. He has used marijuana to control his nausea and stimulate his appetite for more than 20 years. He is legally blind due to the diabetes and has very serious health problems. When he is unable to use marijuana he is essentially bedridden.
In 1996, California voters passed Proposition 215, the Compassionate Use Act (hereafter Act), allowing the medical use of marijuana for qualified users. The Act, codified at section 11362.5 of the Health and Safety Code, provides, in pertinent part:
"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.
"(e) For the purposes of this section, `primary caregiver' means the individual designated by the person exempt under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (Health & Saf.Code, § 11362.5, subds. (d), (e).)
Appellant was convicted of marijuana cultivation and put on probation in 1993. Pursuant to that probation and after passage of the Act, on February 25, 1997, law enforcement officers searched appellant's residence. Officers found seven marijuana plants growing at appellant's residence during that search, but did not confiscate any. Some time after February but before July, Tuolumne County adopted a "three-plant limit" that allowed only three plants to be grown for personal use in the county. On July 11, 1997, law enforcement officers again conducted a probation search of appellant's residence. At that time officers discovered 31 marijuana plants and confiscated 28 of the plants pursuant to the three-plant policy.
Appellant was in the hospital during the July 11 search and confiscation and was interviewed by police while at the hospital later that same day. During that interview, appellant stated that he was growing the marijuana for himself and two other people who used it for medical purposes.
At trial, appellant disavowed his previous statement and contended that all of the marijuana plants at his residence were for his own personal use. The prosecution did not dispute that appellant had a legitimate medical condition and a recommendation from his physician to use and grow marijuana for his personal use, but disputed that the amount of marijuana appellant *81 was growing constituted "personal use." After a three-day jury trial, appellant was convicted of illegal possession and cultivation of marijuana.

DISCUSSION[**]

I-II[**]

III

WAS THE TRIAL COURT REQUIRED TO GIVE AN INSTRUCTION REGARDING THE ACT'S "PRIMARY CAREGIVER" AFFIRMATIVE DEFENSE SUA SPONTE
Appellant argues that the trial court erred in not instructing the jury on the Act's "primary caregiver" defense sua sponte. As correctly pointed out by respondent, the trial court's duty to provide sua sponte instructions on affirmative defenses arises "only if it appears the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (People v. Sedeno (1974) 10 Cal.3d 703, 716, 112 Cal.Rptr. 1, 518 P.2d 913; People v. Breverman (1998) 19 Cal.4th 142, 157, 77 Cal.Rptr.2d 870, 960 P.2d 1094.)
In the instant case, the record does not contain substantial evidence to support a primary caregiver defense. Common sense and the plain language of the statute dictate that the primary caregiver defense requires a defendant present some evidence that he is the primary caregiver for a qualified patient. Section 11362.5, subdivision (e) of the Health and Safety Code defines "primary caregiver" as "the individual designated by the person exempted under this section [11362.5] who has consistently assumed responsibility for the housing, health or safety of that person." In People ex. rel. Lungren v. Peron (1997) 59 Cal.App.4th 1383, 70 Cal.Rptr.2d 20, the court analyzed what level of consistency of care was required to qualify as a "primary caregiver" under the statute. We need not go that far on this record. The record shows that appellant presented no evidence at trial that he had been designated as a primary caregiver for anyone, nor any evidence that he had assumed any responsibility for the housing, health or safety of others he may have been providing marijuana to, let alone the consistent responsibility required by the statute. Appellant did not even present evidence that there were other qualified patients besides himself; in fact, at trial appellant denied that he was providing marijuana to anyone else.
Appellant urged at oral argument that, if not required to automatically give a primary caregiver instruction, the trial court should have sua sponte asked appellant if he wanted an instruction regarding the primary caregiver defense. However, such an inquiry is only appropriate where there is substantial evidence in the record to support such a defense. As set forth above, while there was some evidence presented at trial that appellant was growing marijuana for more than just himself (indeed, that was the grounds on which he was being prosecuted), there was no evidence in the record that he was responsible for the care and treatment of any qualified patient or otherwise fell within the criteria necessary for the defense he now seeks. As set forth in Breverman, "`"`[a]ppellate insistence upon sua sponte instructions [concerning defenses] which are inconsistent with defense trial theory or not clearly demanded by the evidence would hamper defense attorneys and put trial judges under pressure to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions.'"'" (People v. Breverman, supra, 19 Cal.4th at p. 158, 77 Cal.Rptr.2d 870, 960 P.2d 1094.) The trial court's failure to sua sponte instruct regarding the primary caregiver defense was not error.

IV

WAS THE TRIAL COURT REQUIRED TO PROVIDE THE JURY WITH A SPECIAL VERDICT FORM TO DECIDE THE AFFIRMATIVE DEFENSES?
Appellant next contends that the trial court should have provided the jury *82 with a special verdict form allowing the jury to render findings on appellant's defense, then have the judge enter judgment based on the jury's findings. A jury in a criminal trial must, except in enumerated circumstances, deliver a general verdict. (Pen.Code, § 1150.) A special verdict in a criminal case is only warranted where a jury is "in doubt as to the legal effect of the facts proved." (Pen.Code, § 1150.) Whether or not to return a specific special verdict is within the discretion of the jury, not the court. In other words, the court cannot direct a jury to return a special verdict. (6 Witkin & Epstein (2d ed. 1989) Judgment and Attack in Trial Court, § 3030, p. 3747, citing People v. Antonio (1865) 27 Cal. 404, 407; People v. Allen (1941) 47 Cal.App.2d 735, 748, 118 P.2d 927; see also People v. Davis (1995) 10 Cal.4th 463, 511, 41 Cal.Rptr.2d 826, 896 P.2d 119.) The court can instruct a jury of their power to return a special verdict, but such an instruction is inappropriate where there is little doubt as to the legal effect of the facts. (Pen.Code, § 1150.)
In the instant case, appellant did not request a special verdict be submitted to the jury at the time of trial, nor would one have been appropriate. The legal effect of the jury's factual findings was clear: if the jury found that appellant was growing the marijuana for his own personal use, then, as the judge instructed, "[he was] not subject to Section 11357 or Section 11358 of the California Health and Safety Code." The jurors were properly instructed that appellant had to prove the elements of his defense, and to consider the instructions as a whole. This court must assume that a jury would understand that if they found defendant was growing marijuana only for personal use he would be "not guilty." As respondent correctly points out, we must presume that jurors are "intelligent, capable of understanding instructions and applying them to the facts of the case." (Conservatorship of Early (1983) 35 Cal.3d 244, 253, 197 Cal.Rptr. 539, 673 P.2d 209.) There was no error in not presenting the jury with a special verdict form in this case.

V

DOES THE ACT PROVIDE APPELLANT COMPLETE IMMUNITY SUCH THAT HE NEVER SHOULD HAVE BEEN ARRESTED OR CHARGED AT ALL?
Appellant raises, for the first time on appeal, the argument that his conviction should be reversed because the Act provides him complete immunity from the charges he was convicted of and therefore he never should have been arrested or charged at all. Based on this "immunity" interpretation of the Act, appellant urges this court to adopt an "investigate first, arrest later" policy of law enforcement regarding marijuana use. Respondent contends that appellant waived the issue by failing to raise it either by demurrer or by motion challenging the accusatory pleading before trial, or, if the issue is not waived, that the plain language of the Act dictates that the Act provides an affirmative defense rather than complete immunity from prosecution. As set forth below, however, we reject appellant's argument on the merits and we therefore need not decide whether to apply the principles of waiver to appellant's contention.[4]
*83 Whether the Act creates an affirmative defense and/or statutory immunity is a question of first impression. Only three California cases have interpreted the Act in any manner. (See People v. Trippet (1997) 56 Cal.App.4th 1532, 66 Cal.Rptr.2d 559; People ex rel. Lungren v. Peron, supra, 59 Cal.App.4th 1383, 70 Cal.Rptr.2d 20; People v. Rigo (1999) 69 Cal.App.4th 409, fn. 4, 81 Cal.Rptr.2d 624 (declining to address immunity issue.).)

A. Standard of Interpretation
Our interpretation of a voter initiative like Proposition 215 is governed by the same principles that govern all statutory construction. {People v. Rizo (2000) 22 Cal.4th 681, 685, 94 Cal.Rptr.2d 375, 996 P.2d 27.) "Thus, `we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme. [Citation.] When the language is ambiguous, `we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (Rizo, supra, 22 Cal.4th at p. 685, 94 Cal.Rptr.2d 375, 996 P.2d 27.) Finally, we are always to give a statute a common sense construction over that which would lead to an absurd or unworkable result. (People v. Smith (2000) 81 Cal.App.4th 630, 641, 96 Cal.Rptr.2d 856; City of Costa Mesa v. McKenzie (1973) 30 Cal.App.3d 763, 770, 106 Cal.Rptr. 569.)

B. Plain Language of the Statute
Appellant contends that this court should interpret the Act such that it provides him complete immunity from prosecution for violating sections 11357 and 11358 of the Health and Safety Code, and argues that the statutory language supports his interpretation. In its entirety, the Act provides:
"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.
"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:
"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where the medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.
"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.
"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.
"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.
"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

*84 "(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.
"(e) For the purposes of this section, `primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (Health & Saf.Code, § 11362.5.)
Without analysis, appellant emphasizes that the statute states that one of its express purposes is "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (Health & Saf.Code, § 11362.5, subd. (b)(1)(B), italics added.) He further directs us to the language in subdivision (d) of Health and Safety Code section 11362.5 that reads:
"Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient . . . who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Italics added.)
Finally, appellant contends that the Act "trumps" the statutes making the cultivation and possession of marijuana illegal because, he argues, where "two statutes relate to the same subject matter and are in conflict, the latter in time prevails." Pursuant to his interpretation, he then goes on to provide a detailed list of things that he contends the statute requires police officers to do before they could have probable cause to arrest anyone for violating section 11357 or 11358 of the Health and Safety Code.
Appellant's arguments are without merit. First, it is important to note that long accepted canons of statutory construction support interpreting the Act to create an affirmative defense. "`"It is well established that where a statute first defines an offense in unconditional terms and then specifies an exception to its operation, the exception is an affirmative defense to be raised and proved by the defendant. [Citations.]"'" (People v. Spry (1997) 58 Cal. App.4th 1345, 1365, 68 Cal.Rptr.2d 691.) By its language and in the context of the overall statutory scheme, the Act clearly creates an exception. The Health and Safety Code sets forth the illegality of the possession and cultivation of marijuana (Health & Saf.Code, §§ 11357, 11358), and the Act then provides an exception for medical necessity in Health and Safety Code section 11362.5, subdivision (d), stating that those sections "shall not apply" to qualified patients. "[W]here exceptions or provisos are not descriptive of the offense, or define it, but rather afford a matter of excuse, `they are to be relied on in [the] defense.' [Citations.]" (In re Andre R. (1984) 158 Cal.App.3d 336, 341-342, 204 Cal.Rptr. 723) The Act does not define the offense set forth in Health and Safety Code sections 11357 and 11358. Rather, the Act refers to Health and Safety Code sections 11357 and 11358 and then affords a manner of excuse or justification: "the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Health & Saf.Code, § 11352.5, subd. (d).).
Second, the Act does not, as appellant seems to contend, make cultivating and possessing marijuana unconditionally legal, which would, of course, conflict with sections 11357 and 11358 of the Health and Safety Code. Thus, the statutes do not conflict such that the Act "trumps" sections 11357 and 11358 as appellant suggests. The Act simply makes medical necessity an exception to the illegality of the cultivation and possession of marijuana. There is no conflict.
*85 Additionally, designating authorized possession of marijuana as an affirmative defense is consistent with the rule of necessity and convenience. (Spry, supra, 58 Cal. App.4th at 1365, 68 Cal.Rptr.2d 691, citing People v. Fuentes (1990) 224 Cal.App.3d 1041, 1044, 274 Cal.Rptr. 17.) The rule of necessity and convenience provides that "`the burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient. Of course, this burden may not be unduly harsh or unfair....' [Citations.]" (Fuentes, supra, 224 Cal.App.3d at p. 1045, 274 Cal.Rptr. 17.) The court in Fuentes concluded that it was not unduly harsh or unfair to place the burden of proving authorized possession of a hypodermic needle pursuant to Business and Professions Code former section 4149 on the defendant. "This is a fact peculiarly within defendant's personal knowledge and relatively difficult for the prosecutor to disprove." (Fuentes, supra, 224 Cal.App.3d at p. 1046, 274 Cal.Rptr. 17.) In this case, it would be difficult, if not impossible, for a prosecutor to disprove that a person was seriously ill or that marijuana relieves their personal symptoms, let alone for law enforcement to somehow resolve that issue on their own prior to arrest as appellant suggests. Rather, that information will almost always be peculiarly within the defendant's knowledge, as will the amount of marijuana they claim to need to resolve those symptoms.
Finally, that the Act uses the phrases "shall not apply" and "are not subject to criminal prosecution" does not usurp the overall statutory scheme. "We must not view isolated language out of context, but instead interpret the statute as a whole, so as to make sense of the entire statutory scheme." (Carrisales v. Department of Corrections (1999) 21 Cal.4th 1132, 1135, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) As set forth in section V, D, infra, in order for the statutory scheme to make sense, the Act must create an affirmative defense, not immunity from prosecution. Additionally, if there is any ambiguity raised by the phrases singled out by appellant, it is easily resolved by language in the ballot pamphlet.

C. Ballot Pamphlet Language
The ballot pamphlet makes clear that the statute was not intended to create complete immunity for medical users of marijuana. Rather, in the rebuttal to arguments against Proposition 215, the ballot pamphlet reads:
"Police officers can still arrest anyone who grows too much, or tries to sell it. [¶] . . . Police officers can still arrest anyone for marijuana offenses. Proposition 215 simply gives those arrested a defense in court, if they can prove they used marijuana with a doctor's approval." (Ballot Pamp., Proposed Measures with Arguments, Gen.Elec. (Nov. 5, 1996) Rebuttal to Argument Against Proposition 215, p. 61.)
The ballot pamphlet plainly states that medical marijuana users would have a defense in court, and that police officers would still have the absolute right to arrest offenders of sections 11357 and 11358 of the Health and Safety Code without the additional "investigation" proposed by appellant. No part of the ballot pamphlet for Proposition 215 provided any indication that in adopting Proposition 215 the electorate believed they were making medical marijuana users immune from prosecution under Health and Safety Code sections 11357 and 11358. Indeed, another part of the pamphlet states that Proposition 215 would "protect patients from criminal penalties for marijuana;" it does not advise voters that patients would be protected from criminal prosecution. (Ballot Pamp., Proposed Measures with Arguments, Gen.Elec, supra, Argument in Favor of Proposition 215, at p. 60, italics added.) The ballot pamphlet language simply does not support appellant's interpretation.

*86 D. Common Sense Construction
Finally, when interpreting a statute this court must give a statutory provision "`"a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakersone that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity." . . .'" (City of Costa Mesa v. McKenzie, supra, (1973) 30 Cal.App.3d at p. 770, 106 Cal.Rptr. 569, citation omitted.) Here, of course, the lawmakers are the voters. Appellant asks this court to find that, under the Act, the voters intended that police officers and the district attorney "investigate" and make factual determinations regarding whether the user has physician approval, whether they are growing for some other person who has physician approval, and whether the amount of marijuana being grown is reasonably related to the needs of the patient. As appellant admits, "[a]s an immunity, it would mean that the Act was intended as an `investigate first, arrest later' law." Despite the fact that this relatively simple cultivation case generated lengthy expert testimony on the issue of how many marijuana plants could reasonably be related to appellant's personal use, appellant asks that we hold that police officers make such a determination prior to arrest. We decline to do so.
Appellant is correct in noting that the statute does not provide specific guidance regarding how many marijuana plants constitute personal use. However, we cannot agree with appellant's assessment that in the absence of specific statutory guidance local law enforcement are required to either essentially ignore marijuana activity or conduct extensive exculpatory investigations prior to arrest. That local communities will establish protocol for handling marijuana violation investigations under the Act is no different than local prosecutorial discretion regarding when to prosecute or when to seek the death penalty. The fact that in making a decision as to what should be prosecuted a law enforcement agency elects to create a "benchmark criteria for personal medical use" such as 3 plants or 10 plants is a determination best left to local law enforcement administration.[5] Ultimately, however, as pointed out by the First District Court of Appeal, "[w]hat precisely are the `patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact." (People v. Trippet, supra, 56 Cal.App.4th at p. 1549, 66 Cal.Rptr.2d 559.) While this may create some enforcement disparity between police agencies or counties, the simple answer is that this reality is no different than individualized resolution of "current medical needs" made by jurors.
Appellant's proposed interpretation of the Act is simply unworkable. For the reasons set forth above, we hold that the Act provides those claiming to be qualified patients an affirmative defense, not complete immunity from prosecution.

*87 VI

TUOLUMNE COUNTY'S "THREE PLANT" POLICY
Finally, appellant contends that Tuolumne County's "three plant" policy violates the federal and state ex post facto clauses by making the growth of more than three marijuana plants illegal retroactively. The parties spend substantial time arguing whether Tuolumne County's three plant policy constituted an ex post facto violation because, appellant argues, it retroactively made growing more than three marijuana plants criminal. In this case, however, appellant was neither charged nor convicted of "growing more than three marijuana plants." Rather, the prosecution's case was that appellant was growing more plants than he could have needed for personal use, which was illegal at all times under the Act regardless of Tuolumne County's policy.
"[T]he focus of the ex post facto [italics original] inquiry is not on whether a legislative change produces some ambiguous sort of `disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." (California Dept. of Corrections v. Morales (1995) 514 U.S. 499, 506-507, fn. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588, italics added.) Thus, even assuming, arguendo, that a local law enforcement policy could constitute an ex post facto violation, which we need not and do not decide, in the instant case there is no ex post facto issue because, as applied to appellant, the three plant policy neither changed the alleged illegal nature of appellant's conduct nor resulted in additional criminal penalties against appellant.
This court "should not decide constitutional questions unless compelled to do so." (People v. Marsh (1984) 36 Cal.3d 134, 144, 202 Cal.Rptr. 92, 679 P.2d 1033; People v. Williams (1976) 16 Cal.3d 663, 667, 128 Cal.Rptr. 888, 547 P.2d 1000; People v. Gilbert (1969) 1 Cal.3d 475, 481, 484-485, 82 Cal.Rptr. 724, 462 P.2d 580; Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 65-66, 195 P.2d 1.) Deciding possible ex post facto issues raised by the Tuolumne County three-plant limit policy is not compelled by the facts of this case and we decline to do so.

DISPOSITION
The judgment is affirmed.
DIBIASO, J., and WISEMAN, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the paragraph entitled Discussion and parts I and II.
[1] Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (Miranda ).
[**] See footnote *, ante.
[4] Likewise, appellant's purported statutory immunity raises the issue of a possible jurisdictional defect. Appellant does not use the word "jurisdiction," but appears to raise this issue by arguing "[a]ppellant is raising the issue that he has suffered an unauthorized trial and conviction because he was wrongly brought to trial at all." The California Supreme Court has previously recognized the jurisdictional nature of a statutory grant of immunity. (People v. Backus (1979) 23 Cal.3d 360, 381, 152 Cal.Rptr. 710, 590 P.2d 837; People v. King (1967) 66 Cal.2d 633, 645, 58 Cal.Rptr. 571, 427 P.2d 171) (stating "a statutory grant of immunity enjoins the prosecution of a criminal action and thus deprives the court of jurisdiction to proceed.") It is well settled in California that jurisdictional issues can be raised at any time. (Summers v. Superior Court (1959) 53 Cal.2d 295, 298, 1 Cal. Rptr. 324, 347 P.2d 668; People v. Williams (1999) 77 Cal.App.4th 436, 446-447, 92 Cal. Rptr.2d 1.) Thus, assuming, arguendo, appellant was correct that the Act provided him immunity from prosecution, then the trial court would have lacked jurisdiction to enter judgment against appellant. However, because we reject appellant's immunity argument on the merits, there is no jurisdiction issue.
[5] In his supplemental brief appellant asks that we take judicial notice of an Information Bulletin from the California Department of Justice (hereafter "guidelines") apparently distributed to local law enforcement agencies regarding enforcement of the Act. Appellant acknowledges that these guidelines were not a part of the record below, but argues that they "provide potent evidence that the California Attorney General was imperiously interpreting the law for his own political purposes."

Only relevant material may be judicially noticed. (Mangini v. R.J. Reynolds Tobacco Co. (1994) 7 Cal.4th 1057, 1063, 31 Cal. Rptr.2d 358, 875 P.2d 73.) The guidelines do not help to resolve any of the issues presently before this court. In essence, appellant wants to use the guidelines to point out that the Attorney General has not adopted appellant's interpretation of the Act. However, even if we took judicial notice of the guidelines, we could not use it for the purpose appellant apparently intends because we would only judicially notice the existence of the guidelines, not the truth of the matters contained therein. (Mangini v. R.J. Reynolds, supra, 1 Cal.4th at 1062, 31 Cal.Rptr.2d 358, 875 P.2d 73; Sosinsky v. Grant (1992) 6 Cal.App.4th 1548, 1566, 8 Cal.Rptr.2d 552.) In any event, as the guidelines are not pertinent to our analysis, we deny the request. (Evid.Code, § 454, subd. (a)(1).)